**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| KEITH DARNELL DENEGAL,<br><br>Plaintiff,<br><br>v.<br><br>P.D. BRAZELTON, et al.,<br><br>Defendants. | ) | Case No.: 1:14-cv-01410-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS COMPLAINT<br><br>[ECF No. 11] |

Plaintiff Keith Darnell Denegal is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding on Plaintiff's claim that Defendants P.D. Brazelton, K.D Geringer, J.D. Lozano, and J. Knight violated the Free Exercise Clause of the First Amendment by denying Plaintiff's request for a name change while he was housed at Pleasant Valley State Prison (PVSP). Plaintiff seeks injunctive relief and damages.

///

///

///

///

On March 17, 2015, Defendants filed a motion to dismiss the complaint. Plaintiff filed an opposition on June 25, 2015,[1] and Defendant filed a reply on July 2, 2015.

## II.

## DISCUSSION

### A. Allegations of Complaint

On April 4, 2013, Plaintiff requested a name change due to his religious beliefs. On April 11, 2013, Plaintiff received a written response from Mr. P.D. Brazelton stating that his request was denied. On April 22, 2013, Plaintiff wrote an inmate grievance stating that he has a constitutional right under the First Amendment of the United States Constitution to change his name for religious purposes, and Plaintiff's grievance was denied at every level of review by K.D. Geringer, J.D. Lozano, and J. Knight.

### B. Motion to Dismiss Standard Under Rule 12(b)(6)

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court

[1] Defendants object to Plaintiff's opposition as untimely. Defendants contend that Plaintiff filed his opposition after the original deadline and after the extended deadline retroactively granted by this Court. With application of the mailbox rule, Plaintiff filed a motion for an extension of time to file his opposition on April 21, 2015. (ECF No. 16.) On May 7, 2015, the Court granted Plaintiff thirty days from the date of service of that order to file an opposition. (ECF No. 17.) Plaintiff filed his opposition on June 12, 2015-5 days after the extended deadline. (ECF No. 18.) Plaintiff's opposition will be deemed timely filed given Plaintiff's pro se status and inability to file documents directly with the Court due to his imprisonment.

must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

**C. Findings**

1. Defendants Knight, Lozano, and Geringer

Defendants Knight, Lozano, and Geringer argue they are entitled to dismissal based their involvement with Plaintiff's name change request which was limited to their review and denial of his inmate grievances.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). While Defendants are correct insofar as Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Defendants' responses to Plaintiff's inmate appeals are not wholly irrelevant, however, when Plaintiff is not claiming a due process violation, and such appeal responses may be the basis for liability.

Upon further review of Plaintiff's complaint, the undersigned finds that defense counsel's argument that Plaintiff's claims against Defendants Knight, Lozano, and Geringer should be dismissed for lack of personal involvement to be persuasive. However, for the reasons explained below, the undersigned finds that Plaintiff's complaint states a cognizable First Amendment claim against Defendant Brazelton and he is not entitled to qualified immunity based on the present record.

Plaintiff seeks to impose liability on Defendants Knight, Lozano, and Geringer based solely on their review and denial of the inmate appeals submitted by Plaintiff relating to the denial of his name change by Defendant Brazelton. Although Defendants Knight, Lozano, and Geringer denied

Plaintiff's inmate appeals, they have not deprived him of an independent federal constitutional right. This is because it is well established that "inmates lack a separate constitutional entitled to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Plaintiff's only claim against Defendants Knight, Lozano, and Geringer involves their denial of Plaintiff's administrative grievance relating to a past violation by Defendant Brazelton. The fact that Defendants Knight, Lozano, and Geringer denied Plaintiff's inmate appeal challenging Defendant Brazelton's denial of his request for a religious name change does not support the existence of a sufficient causal connection between Defendants' conduct and the alleged constitutional violation by Defendant Brazelton. Accordingly, because Plaintiff's claim against Defendants Knight, Lozano, and Geringer is limited to their review of Plaintiff's grievances, the Court recommends the motion to dismiss be granted.

2. First Amendment Violation-Denial of Name Change Request

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Ninth Circuit has recognized "that the adoption of Muslim names by converts to the Islamic faith is an exercise of religious freedom." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994). The burden falls on the prison officials to prove that the burden on Plaintiff's exercise of religion was reasonably related to a legitimate penological objective. Ashelman v. Wawrzaszek, 111 F.3d 674, 677-678 (9th Cir. 1997) (applying test from O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), and Turner v. Safley, 482 U.S. 78 (1987), to determine reasonableness of decision denying Jewish inmate's request for an all-kosher diet); see, e.g., Shakur, 514 F.3d at 887-888 (remanding First

Amendment claim regarding alternative kosher diet requested by prisoner for district court to make sufficient findings pursuant to Turner as to impact of the accommodation on the prison and the availability of ready alternatives.) There are several factors to be analyzed when considering if a restriction is reasonable: (1) whether there is a logical connection between the action and a policy goal; (2) whether there are "alternative means" of exercising the right; (3) the impact of the action or accommodation on guards and other inmates, or on the "allocation of prison resources"; and (4) the "absence of ready alternatives." Turner, 482 U.S at 89-91.

In California, Plaintiff, as a state prisoner, may not petition the court to legally change his name unless he is first permitted to do so by the Director of Corrections. Cal. Civ. Proc. § 1279.5(b). The process for obtaining permission from the Director of Corrections requires prisoners to first request a legal name change from the Warden. Cal. Code Regs., tit. 15, § 3294.5(a). If the request is denied, the Warden shall provide the reason(s) for the denial and the process ends. § 3294.5(b). If approval of the request is recommended, the Warden shall forward the request to the Institutions Division Regional Administrator. § 3294.5(c). If the Institutions Division Regional Administrator agrees with the approval recommendation, a letter is sent to the court explaining the reasons for approval of the name change by the Department of Corrections. § 3294.5(e). Final approval is then in the hands of the court. Cal. Civ. Proc. § 1279.5(b); Cal. Code Regs., tit. 15, § 3294.5(g).

In Malik v. Brown, a state prisoner sought to legally change his name to a Muslim name during his imprisonment. 16 F.3d at 1331. The prison informed the prisoner that he was required to send and receive mail in his commitment name only. Id. The Ninth Circuit applied the Turner factor analysis and found the state had a legitimate interest in the continued used of the inmate's commitment name. Id. at 334. However, there was no legitimate penological interest in preventing the prisoner from using both is religious and commitment names. Id. It was determined "that allowing an inmate to use both his religious and committed names 'is a reasonable middle ground between absolute recognition of the plaintiff's Muslim names and the prison interests of order, security and administrative efficiency.'" Id., citations omitted. Defendant attempts to distinguish Malik on the basis that the instant action does not relate to a prison regulation, but rather a decision to deny an inmate's petition for a name change, is unfounded. Regardless of whether the action involves a prison regulation or a

prison decision, the applicability and analysis of the Turner factors remains the same, and Defendant submits no argument to the contrary.

There is insufficient evidence to support Defendant's analysis of the Turner factors to the present case. Here, Defendant does not dispute the sincerity of Plaintiff's religious beliefs. Rather, in moving to dismiss Defendant contends that the denial of the name change was reasonably related to legitimate penological objectives, including prison security and the continuity of Plaintiff's prison records. However, in order to pass constitutional muster, the means used to carry out Defendant's stated goals must be rationally related to these legitimate interests. Turner, 482 U.S. at 89-91.

Plaintiff has alleged that the tenets of his religion require him to change his name. He further alleges that Defendant Brazelton refused to accommodate his request for a name change and denied his inmate grievances requesting such relief. Defendant argues that the denial of the name change was based on legitimate penological interests with regard prison security and continuity of prison records. The inmate grievances and responses attached to Plaintiff's complaint do not fully demonstrate that Defendant's denial of Plaintiff's name change was undeniably related to legitimate penological interests. To make such finding, the Court would have to accept the truth of such documentation at face value, without any supporting evidence, which the Court cannot do on a motion to dismiss. In addition, the denial based on security issues within the institution by allowing Plaintiff to change his name is equally applicable to every prisoner seeking to legally change their name. To accept Defendant's reason as sufficient and at face value would effectively be a finding that no prisoner in California could ever legally change his name. Furthermore, Defendant's description of the safety issues present if Plaintiff were allowed to legally change his name is based on the assumption that prison officials would be required to discontinue use of Plaintiff's commitment name on their records. However, such finding fails to consider the alternative to Plaintiff's request to simply change and use his religious name, in conjunction to his commitment name. Defendant argues that Plaintiff requested only a "legal" name change; however, contrary to Defendant's argument, Plaintiff repeatedly states that he sought and requested the use of dual names in order to comply with his religious beliefs. (ECF No. 1, Compl. Ex. A; ECF No. 18, Opp'n at 3-4.) Defendant's argument to the contrary is rejected.

Furthermore, all of Defendant's arguments for dismissal of Plaintiff's free exercise claim under Turner fail for the same reasons. More specifically, as to the second factor of Turner, Defendant submits that Plaintiff could have exercised his common law right to go by his "righteous" name. However, Defendant fails to consider that Plaintiff has a legal right to petition for a name change, and if as he alleges it was inappropriately denied (without any consideration of alternative means), the use of the common law right is insignificant. As to the third Turner factor, Defendant argues that a formal name change would create a substantial burden in that it would require the prison to "amend the many volumes of documentation maintained and compiled under [Plaintiff's] name." Defendant fails to consider the fact that Plaintiff could use two names to alleviate any burden. As to the fourth factor, Defendant denied Plaintiff's request without addressing the possibility that Plaintiff could use his committed name along with his religious name, and failing to consider a two-name solution, Defendant's analysis fails. Thus, for the reasons set forth above, the Court finds that Plaintiff has adequately alleged a First Amendment claim relating to the denial of his request for a religious name change.

2. Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.

While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

As set forth above, Plaintiff alleges a cognizable claim against Defendant Brazelton under the First Amendment. Thus, the Court proceeds to the second step to determine whether Plaintiff's rights were clearly established at the time of the violation.

Here, Plaintiff's right to practice his religion and request a religious name change was clearly established at the time the claims in this action arose. See Shakur v. Schriro, 514 F.3d at 884-885; Malik v. Brown, 16 F.3d at 333-334. Defendant was on notice that *improperly* denying Plaintiff's name change request based on his sincerely held religious beliefs would substantially burden Plaintiff's exercise of his religion in violation of the First Amendment. When the pleadings are accepted as true and reasonable inferences are drawn in Plaintiff's favor, the Court finds it would be clear to prison officials that the failure to provide a name change and/or alternative would violate the First Amendment, and Defendant is not entitled to qualified immunity at the pleading stage of the proceedings.

3. Claim for Injunctive Relief

Defendant argues that Plaintiff's claim for injunctive relief is moot and should be dismissed.

A case becomes moot if the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982). The events at issue in this action took place at Pleasant Valley State Prison (PVSP), and Plaintiff is currently housed at California State Prison, Los Angeles. (ECF No. 1.) Defendant Brazelton is not the Warden at California State Prison, Los Angeles. In addition, a request for injunctive relief becomes moot if a prisoner is transferred. Andrews v. Cervantes, 493 F.3d 1047, 1053, n.5 (9th Cir. 2007) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam)). There is no indication that Plaintiff expects to be transferred back to PVSP. If Plaintiff presently desires a name change, he is required to submit a request to the Warden at the California State Prison, Los Angeles, where he is currently located. See Cal. Code Regs., tit. 15, § 3294.5(a).

## III.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss for failure to state a cognizable claim for relief be GRANTED as to Defendants Knight, Lozano, and Geringer;
2. Defendants' motion to dismiss for failure to state a cognizable claim for relief and qualified immunity be DENIED as to Defendant Brazelton; and
3. Plaintiff's claim for injunctive relief be dismissed as MOOT.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 22, 2015**

UNITED STATES MAGISTRATE JUDGE